UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

           v.

ANTONIO MORENO-NANEZ; FERNANDO MORENO-CAMACHO,

        Defendants.
_____/

NO. CR. 11-289 WBS

<u>ORDER RE: MOTION TO SUPPRESS</u>

----oo0oo----

        Before the court is defendants Antonio Moreno-Nanez ("Nanez") and Fernando Moreno-Camacho's ("Camacho") joint motion to suppress evidence obtained during a warrantless inventory search of Nanez's car and subsequent searches conducted pursuant to warrants obtained based on the evidence discovered during the inventory search. The court held an evidentiary hearing on November 29, 2011, and provided the parties with an opportunity for further briefing before presenting argument to the court on defendants' motion to suppress.

1

I.  Factual and Procedural Background

On June 19, 2011, at approximately 3:00 a.m., California Highway Patrol Officers Eric Pohrman and Daniel Spafford conducted a valid stop of a Honda Civic that was traveling northbound on Interstate 5 just past the point where Central Weed goes under the freeway. Camacho was driving the Civic and Nanez was in the front passenger seat. When the officers approached the vehicle, both noticed the smell of alcohol and that Camacho and Nanez had red, watery eyes, which they had been trained to recognize as a sign of intoxication. After attempting to perform various field sobriety tests and performing a preliminary alcohol-screening (PAS) test, Officer Spafford concluded that there was probable cause to arrest Camacho for driving under the influence and placed him under arrest.

While Officer Spafford was determining whether Camacho was intoxicated, Officer Pohrman briefly spoke to Nanez. Nanez provided Officer Pohrman with a California proof of registration for the Civic, indicating that it was registered to Nanez at a Modesto address. Nanez also provided Officer Pohrman with his Mexico driver's license. Officer Pohrman contacted dispatch to confirm that the Civic was registered to Nanez at the Modesto address and that the date of birth on Nanez's Mexico driver's license matched the date of birth associated with Nanez's registration. From this information, he concluded that Nanez was the owner of the Civic.

Pursuant to California Vehicle Code section 22651(h), which permits officers to impound a car when they legally arrest

"a person driving or in control of a vehicle for an alleged offense," Officer Pohrman decided to impound the car and requested the expedited arrival of a tow truck. At the time Officer Pohrman requested a tow truck, the officers intended to take Nanez to a local 24-hour truck stop where he could arrange for a ride or stay in a hotel. After the tow truck was requested, the officers conducted an inventory search of the Civic. During this search, the officers discovered an open cardboard box in the trunk of the car that contained a football-sized package wrapped in foil and plastic wrap. When Officer Spafford showed Officer Pohrman the package, Officer Pohrman commented that it looked like it was a wrapped tri-tip steak, especially because he thought there was blood on the bottom of the package. Officer Spafford squeezed the package, noticing that it was "crunchy" and appeared to be a "crystal substance." Because he could not determine the contents, Officer Spafford cut the package open with a knife and concluded that it appeared to contain an illegal substance.

Based on the substance found in the trunk, which was later determined to be methamphetamine, the officers arrested Nanez. Warrants were subsequently obtained to search the Civic and cell phones. The Government charged defendants with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Docket No. 11.) Now, defendants move to suppress the evidence obtained in the inventory search and the subsequent warrant searches that were based on the fruits of the inventory search. Defendants do not dispute that the officers had probable cause to arrest Camacho for driving under the

influence. They contend, however, that Nanez should have been permitted to drive his vehicle away from the scene of the stop and thus the impounding and corresponding inventory search of the car violated the Fourth Amendment.

II. Discussion

    A. Seizure of the Vehicle

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005). "A seizure conducted without a warrant is 'per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well delineated exceptions.'" United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372 (1993)). "The burden is on the Government to persuade the district court that a seizure comes 'under one of a few specifically established exceptions to the warrant requirement.'" Id. (quoting United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir. 1992)). The Government need only prove that the officers' seizure and subsequent searches comport with the Constitution by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 487-89 (1972); accord United States v. Cales, 493 F.2d 1215, 1215 (9th Cir. 1974) (government is held to the preponderance of the evidence, not reasonable doubt, standard in a motion to suppress); see also United States v. Shetler, --- F.3d ----, ----, 2011 WL 6794021, at *4 (9th Cir. 2011) ("It is the government's burden to show that evidence is not 'fruit of the poisonous tree.'" (quoting United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002))) (internal quotation marks omitted).

The only exception to the warrant requirement relevant to the officers' seizure of Nanez's Civic is the "community caretaking" doctrine, which allows officers to impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic." South Dakota v. Opperman, 428 U.S. 364, 369 (1976); see also Opperman, 428 U.S. at 369 ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."). "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Miranda, 429 F.3d at 864. "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." Id. at 865.

Here, the officers effected a stop of the Civic on the northbound I-5 freeway in Weed and Camacho pulled the car over on the right shoulder of the freeway at a point where the freeway curved left. Given its location on the freeway and testimony that it posed a risk to public safety and vandalism, the officers were reasonable in determining that the Civic could not safely be left on the side of the freeway.[1] Defendants contend, however, that the seizure of the Civic was unreasonable because Nanez, the

---

[1] Although defendants originally argued that the officers should have left the car on the freeway, they abandoned that argument after the evidentiary hearing.

5

owner of the car and passenger at the time of the stop, should have been able to maintain possession of his vehicle and drive it away after the officers arrested Camacho.

Although the "reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means," Illinois v. Lafayette, 462 U.S. 640, 647 (1983), the court agrees that under the circumstances of this case impounding a vehicle under the community caretaker doctrine to remove it from an unsafe location would be unreasonable if the owner of the vehicle was present at the time of the stop and legally able to immediately drive the vehicle away from the scene. In concluding that the decision to impound a vehicle was unreasonable in Miranda, the Ninth Circuit emphasized that the owner of the vehicle, who was also a passenger at the time of the stop, was licensed to drive the car.[2] Miranda, 429 F.3d at 866. In discussion, the court explained that "[t]he policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." Id. at 865 (quoting United States v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996)) (internal quotation marks omitted). Additionally, when concluding that the impoundment of a vehicle did not come within the community caretaker function in United States v. Maddox, 614 F.3d 1046 (9th Cir. 2010), the Ninth Circuit emphasized that, "because [the

---

[2] In Miranda, the car was parked in the owner's driveway at the time of the stop, thus impounding it was also unnecessary to protect public safety. Miranda, 429 F.3d at 865-66.

6

defendant] offered to have his friend move the vehicle, the officer did not sufficiently consider alternatives before impounding [the] truck." Id. at 1050.

Still, it would only have been unreasonable for the officers to impound Nanez's vehicle if Nanez was able to drive away "in compliance with all regulations intended to ensure the vehicle's safe operation." Miranda, 429 F.3d at 865. The Government contends that Nanez was unable to do so at the time of the stop because 1) he lacked a valid driver's license permitting him to drive in California; and 2) he was intoxicated. The parties therefore agree that the only factual disputes relevant to determining whether the officers' seizure of the Civic comported with the Fourth Amendment are 1) whether the officers reasonably believed Nanez was a resident of California and therefore could not legally drive in California because he lacked a California driver's license; and 2) whether the officers reasonably believed Nanez was intoxicated and therefore unable to drive.

1. Lack of a California Driver's License

Under California law, a person may not operate a motor vehicle without a valid California driver's license unless a statutory exception applies. Cal. Veh. Code § 12500(a). Relevant to this case, section 12502(a)(1) allows "[a] nonresident over the age of 18 years having in his or her immediate possession a valid driver's license issued by a foreign jurisdiction of which he or she is a resident" to operate a vehicle in California without a California driver's license. Id. § 12502(a)(1) (emphasis added); see also id. § 12505(a) ("For

7

purposes of this division . . . , residency shall be determined as a person's state of domicile. 'State of domicile' means the state where a person has his or her true, fixed, and permanent home and principal residence and to which he or she has manifested the intention of returning whenever he or she is absent. Prima facie evidence of residency for driver's licensing purposes includes, but is not limited to, the following: (A) Address where registered to vote. (B) Payment of resident tuition at a public institution of higher education. (C) Filing a homeowner's property tax exemption. (D) Other acts, occurrences, or events that indicate presence in the state is more than temporary or transient.").

Here, it is undisputed that Nanez lacked a California driver's license, but possessed and showed Officer Pohrman his Mexico driver's license. If Nanez was a resident of Mexico, section 12502(a)(1) would have allowed him to legally drive in California with his Mexico license. The officers were reasonable in believing, however, that Nanez was a California resident and therefore unable to legally drive in California with his foreign license.

When Officer Pohrman inquired about the registration of the Civic, Nanez provided him with his current proof of registration that listed an address in Modesto. Officer Pohrman pointed to the address and asked Nanez if he "lived" in Modesto and Nanez replied with either "Yes" or "Modesto." Although Nanez did not speak English fluently, the evidence does not suggest that he did not understand Officer Pohrman's question, and Officer Pohrman testified that he believed he was communicating

with Nanez effectively. Officer Pohrman also verified with dispatch that the Civic was registered to Nanez at the Modesto address identified on the registration.

Defendants argue that the officers should not have relied on the fact that Nanez's car was registered in California to determine that he was a California resident because California law requires a nonresident to register a vehicle in California if the vehicle "is based in California or primarily used on California highways." Cal. Veh. Code § 4000.4(a). While this makes it possible that Nanez maintained his permanent residence in Mexico, but registered his car in California because he left it in the state or primarily used it there, it was more probable that he registered his car in California because he maintained his permanent residence in the state. Moreover, although section 4000.4(a) requires a nonresident to register a car in California under certain circumstances, the court is not aware of any requirement that a nonresident provide a California address to register the car. If Nanez maintained his domicile in Mexico, it would seem more likely than not that he would use his Mexico address when registering his car.

Nanez also had an "x-ray number" assigned to him, which Officer Pohrman testified is a "number assigned to someone that doesn't have a license in California, but has been contacted by law enforcement in the past in California" and is usually assigned when law enforcement has cited the nonresident. The x-ray number associated with Nanez also indicated an address for Nanez in Modesto, thus Officer Pohrman was reasonable in believing that Nanez had provided a Modesto address as his place

of residence on a prior occasion.[3]

Lastly, there has not been any suggestion or showing that the officers acted in bad faith or for the purpose of conducting an investigation of the contents of the vehicle. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). The officers were on "general patrol" that evening, which meant that they were primarily interested in looking for intoxicated drivers, and neither of the officers were members of the county's drug task force. Until the methamphetamine was found in the trunk, the officers never asked Nanez to exit the vehicle or took any actions or made any statements suggesting that they suspected criminal activity beyond Camacho driving under the influence. The officers also credibly testified that, at the time they decided to impound the car, they intended to take Nanez to a nearby 24-hour truck stop, which suggests that they did not impound his car in a bad faith effort to uncover incriminating evidence against him. In his "Crime Summary Information / Probable Cause Declaration," Officer Spafford listed a Modesto address as Nanez's residence, which further corroborates the officers' testimony that they believed Nanez was a Modesto resident.

Based on this evidence, Officer Pohrman was reasonable in believing that Nanez maintained his permanent domicile in Modesto and was therefore unable to legally drive his car in California.

---

[3] Even if the DMV could have issued the x-ray number when Nanez registered his car, Officer Pohrman did not appear to believe that registering a car alone could result in an x-ray number.

10

///

### 2. Intoxication

In addition to lacking a valid license to drive in California, Officers Pohrman and Spafford testified that Nanez was further unable to depart with his car because he was intoxicated. At the hearing, Officers Pohrman and Spafford testified that they received training in how to assess whether a person is intoxicated. Officer Pohrman, who spoke to Nanez at close range, testified that Nanez had red, watery eyes, a glazed-over appearance, spoke with slurred speech, and had an odor of alcohol on his breath. Officer Spafford, who originally approached the vehicle from the passenger side, testified that he smelt a strong odor of alcohol coming from the car and that Nanez had red, watery eyes. Based on these observations, the officers testified that they believed Nanez was intoxicated, and the court found their testimony credible at the evidentiary hearing.

Defendants rely heavily on the fact that Officer Spafford did not reference Nanez's level of intoxication in his initial reports and that the officers only memorialized their observations after defendants filed their motion to suppress. The lack of information in the reports about Nanez's level of intoxication does not cause the court to question the officers' credible testimony at the hearing that they believed Nanez was intoxicated. When drafting the reports, only the intoxication of Camacho was relevant because only he was arrested for driving under the influence. Nanez's level of intoxication was not directly relevant to the potential charges he faced as a result of the illegal substances in his trunk. The officers also

11

testified that it is not their practice to memorialize in their reports whether a passenger is intoxicated.

While Nanez's level of intoxication is relevant to the inquiry under the community caretaker exception, the officers were not preparing reports in anticipation of a motion to suppress based on that exception. In the early hours of the morning, they made a determination that Nanez was not fit to drive and therefore the car needed to be towed from the side of the freeway. From the fact that Nanez was already a passenger in his own vehicle, it was rational for the officers to infer that Nanez did not believe he could legally drive, especially in the absence of any explanation about why he was not driving at the time of the stop. The court would not necessarily expect what likely seemed to be such a simple decision to the officers on the scene to be memorialized in a report pertaining to arrests of the driver for driving under the influence and the driver and passenger for possession of methamphetamine.

Defendants also argue that the officers should have taken greater efforts to determine Nanez's level of intoxication, such as performing field sobriety tests. When addressing the reasonableness of inventory searches pursuant to the caretaker function, the Supreme Court has explained that probable cause is not necessary. See Bertine, 479 U.S. at 371-72. By analogy, the Fourth Amendment did not require the officers to substantiate their beliefs to the level of probable cause that would have been

required to arrest Nanez for driving under the influence.[4]

The court recognizes that, in the "Receiving / Booking / Releasing / Check List" for Nanez completed at 8:20 a.m. the morning of his arrest, the intake officer circled "no" for whether Nanez was intoxicated and indicated that he did not observe any signs of intoxication. These observations, however, were made over five hours after Officers Pohrman and Spafford observed Nanez. There was also no testimony from the individual who filled out the intake sheet or evidence about the level of inquiry performed when it was completed. When weighed against uncontroverted and credible eye witness testimony from both officers at the scene, the intake form completed five hours later does not persuade the court that Nanez was not intoxicated at the time of the stop.

As previously discussed there is also no evidence suggesting that the officers acted in bad faith or for the sole purpose of investigation. Cf. Bertine, 479 U.S. at 372. Accordingly, because the officers reasonably believed that Nanez could not legally drive his car away from the scene because he lacked a valid driver's license and was intoxicated, the officers' decision to impound his car pursuant to their community caretaker function did not violate the Fourth Amendment.

B.  Inventory and Subsequent Searches

---

[4] The officers may have considered performing field sobriety tests if Nanez had requested to drive his car, which did not happen because of the timing of events in this case. It appears from the testimony that, after requesting a tow truck to come, the officers did not inform Nanez that they were impounding his car and whether Nanez could legally drive was no longer relevant after the inventory search revealed methamphetamine in the trunk.

13

"A lawfully impounded vehicle may be searched for the purpose of determining its condition and contents at the time of impounding," and "[a]nything observed in the vehicle during the inventory search is admissible against the defendant." United States v. Caseres, 533 F.3d 1064, 1074 (9th Cir. 2008) (citing Opperman, 428 U.S. at 376); see also Bertine, 479 U.S. at 371-72 ("[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. . . . [and] serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."). "Such warrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property." Caseres, 533 F.3d at 1074; see also Florida v. Wells, 495 U.S. 1, 3-5 (1990) (emphasizing the importance of standardized criteria governing inventory searches).

Arguing only that the seizure of the Nanez's Civic was unconstitutional, defendants do not claim that the inventory search the officers performed failed to adhere to the relevant police procedures or violated the Fourth Amendment. Defendants' attack of the subsequent searches conducted with warrants based on the evidence obtained during the inventory search also fails because defendants sought to suppress the evidence discovered in the subsequent searches only on the ground that it was "fruit of the poisonous tree" of the inventory search.

IT IS THEREFORE ORDERED that defendants' motion to

suppress be, and the same hereby is, DENIED.

DATED: February 7, 2012

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE